IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 15 |
| | ) |
| ELECTRO SONIC INC., *et al.*,[1] | ) Case No. 14-10240 (MFW) |
| | ) |
| Debtors in a Foreign Proceeding. | ) (Joint Administration Requested) |

**DECLARATION OF SHELDON TITLE IN SUPPORT OF (I) VERIFIED CHAPTER 15 PETITIONS, (II) FOREIGN REPRESENTATIVE'S MOTION FOR ORDERS GRANTING PROVISIONAL AND FINAL RELIEF IN AID OF FOREIGN CANADIAN PROCEEDING, AND (III) CERTAIN RELATED RELIEF**

SHELDON TITLE declares under penalty of perjury:

1. I am a Senior Vice President of MNP Ltd. ("MNP" or "Foreign Representative"), the proposal trustee for both chapter 15 debtors ELECTRO SONIC INC. ("ESI") and ELECTRO SONIC OF AMERICA LLC ("ESA," and together with ESI, the "Company" or the "Debtors"), the authorized foreign representative in proceedings under section 50.4(1) of the Canadian *Bankruptcy and Insolvency Act*, R.S.C. 1985,c. B-3, as amended (the "BIA") (the "Canadian Proceeding") pending before the Ontario Superior Court of Justice (the "Canadian Court"), and as such, I am fully familiar with the facts and circumstances set forth herein.

2. MNP is properly licensed with Industry Canada — Office of Superintendent of Bankruptcy Canada. I submit this declaration in support of the following motions and other documents (collectively, the "First Day Papers"): (a) the verified chapter 15 petitions of the Debtors; (b) the Foreign Representative's Motion for Orders Granting Provisional and Final

---

[1] The Debtors in the foreign proceeding, along with the last four digits of the United States Tax Identification Number or Canadian Business Number, as applicable, of each of the Debtors are as follows: (i) Electro Sonic Inc. (____); and (ii) Electro Sonic of America LLC (____).

Relief in Aid of Foreign Canadian Proceeding (the "Recognition and Relief Motion"); (c) the Foreign Representative's Motion for an Order Directing the Joint Administration of the Debtors' Chapter 15 Cases (the "Joint Administration Motion"); and (d) the Foreign Representative's Motion for an Order Scheduling Hearing and Specifying the Form and Manner of Service of Notice (the "Notice Procedure Motion"). I am authorized by the Debtors to submit this Declaration on their behalf in support of the First Day Papers.

3. In my role as an officer of the Foreign Representative, I have become familiar with the history, day-to-day operations, assets, financial condition, business affairs, and books and records of each of the Debtors. Except as otherwise indicated, all facts set forth in this Declaration are based upon: (a) my personal knowledge; (b) my review of relevant documents; (c) information supplied to me by other employees of the Foreign Representative or its affiliates, the officers, directors, and employees of the Debtors, or other professionals retained by the Debtors; or (d) my opinion based upon my experience and knowledge of the Debtors' operations and financial condition. I am an individual over the age of 18 and, if I am called upon to testify, I will testify competently to the facts set forth herein.

## BACKGROUND

**A.    The Company.**

4. Electro Sonic Inc. is an Ontario corporation governed by the *Ontario Business Corporations Act* and has its registered office located in Markham, Ontario, Canada. Electro Sonic of America, LLC is a Delaware limited liability company as evidenced by the certificate of formation filed in the official records of the State of Delaware. Attached hereto as Exhibits A and B, respectively, are copies of the public report for ESI and the certificate of formation for ESA.

{00013335. }
99999-1555/LEGAL29311246.1

-2-

5.  The operations of ESI and ESA are highly integrated and share managing directors and headquarters in Markham, Ontario. All accounting, finance, and human resource functions for ESI and ESA are centralized and managed from the head office in Markham, where payroll is also processed for all Canadian and U.S. operations. Additionally, ESI is the sole customer of ESA. ESI and ESA are seeking joint administration in both the Canadian Proceedings and with this Court.

6.  The Company was founded in 1952 by Isadore Rosenthal. Originally, an appliance, high fidelity equipment and components distributor as well as a retail store, the Company eventually removed itself from the former and in 1970 became an electronic and electrical parts distributor. In 1973, the Company moved from its original location at 543 Yonge Street in downtown Toronto to a new 100,000 square foot single level office and warehouse at 1100 Gordon Baker Road in Scarborough, Ontario. In 1989, the Company acquired the assets of a Vancouver, British Columbia based distributor, which allowed the Company to expand into Western Canada and become a full national distributor. At the time, the Company had sales offices in Winnipeg and Calgary, as well as a warehouse in Vancouver. These branches were quickly augmented by a Montreal sales office. ESA was formed in Delaware in December 2009 and the Company moved its warehousing facilities to a brand new state of the art 80,000 square foot warehouse in Tonawanda, New York which is 30 minutes from the Canadian border. In early 2011, the Company's Toronto office relocated to its present location at 55 Renfrew Drive, Markham, Ontario.

7.  The Company is now headquartered in Markham, Canada, with sales offices located across Canada and a 3,000 square foot distribution center in Vancouver, British

Columbia. All product and sales functions are managed there. Also, all invoicing is completed, and all cash is collected, in Markham, Canada.

8.  The Company is now engaged in full-service electronic and electrical component distribution. The Company specializes in developing customized programs and services to suit original equipment manufacturers, as well as the maintenance, repair and overhaul of equipment based on customers' needs.

**B.  Financial Difficulties and Filing of a Foreign Insolvency Proceeding in Canada.**

9.  The Company is in financial difficulties and is unable to meet its obligations as they generally become due. The Company has experienced a decline in sales from 2008 to 2014 due to economic downturn and market pressures. As a result of the economic downturn in 2009, the industry experienced a significant decline in sales. At the same time, over the past several years sourcing product on the internet has increased, typically amongst smaller customers who will take advantage of prices offered by lower service/higher volume distributors. As well, a portion of the higher volume manufacturing businesses have left North America and established facilities in lower labor cost jurisdictions. That has caused larger distributors to look downstream to smaller customers for business, which has increased competition and eroded margins.

10. In the fall and early winter of 2013, MNP Corporate Finance Inc. conducted an extensive sale process for the sale of the Company on a going concern basis. As a result, the Company received a letter of intent dated February 2, 2014 from a strategic purchaser, which has been accepted by the Company (the "LOI"). Upon request, a copy of the LOI will be provided to the Court on a confidential basis, and the Company requests that the LOI be sealed and not form part of the public record.

11. The LOI requires that the sale of the Company's business and assets be completed under an insolvency proceeding in Canada, and contemplates that a Chapter 15 proceeding be commenced to recognize the Canadian insolvency proceedings in the United States.

12. On or about February 6, 2014, the Company commenced proceedings in Canada by filing the Notice of Intention to Make a Proposal pursuant to Section 50.4 of the BIA (the "NOI"), which pursuant to subsection 69(1) of the BIA, stayed all proceedings against the Debtors (the "Canadian Stay").. On or about February 7, 2014, Industry Canada — Office of Superintendent of Bankruptcy Canada issued a *Certificate of Filing of a Notice of Intention to Make a Proposal Subsection 50.4* (the "Certification of Filing of the NOI"). Attached hereto as Exhibits C, D and E, respectively, are copies of the NOI, the Certification of the Filing of the NOI, and an Affidavit of Joel Rosenthal filed in the Canadian Court ("Rosenthal Affidavit"), each of which is incorporated herein by this reference.

13. In connection with the NOI and Rosenthal Affidavit, on February 10, 2014, the Canadian Court authorized and empowered MNP as the Proposal Trustee in the Canadian Proceeding ("Proposal Trustee") as a foreign representative for purposes of filing Chapter 15 petition in the United States. Specifically, the Canadian Court entered an order (the "Trustee Order") providing that:

> THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist Electro Sonic, the Proposal Trustee and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and provide such assistance to Electro Sonic and to the Proposal Trustee, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant foreign representative status to the Proposal Trustee in any foreign proceeding, or to assist Electro Sonic and the Proposal Trustee and their respective agents in carrying out the terms of this Order.

THIS COURT ORDERS that the Proposal Trustee be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and the Proposal Proceedings for assistance in carrying out the terms of this Order, and the Proposal Trustee is authorized and empowered to act as a foreign representative in respect of the Proposal Proceedings for the purpose of having the Proposal Proceedings recognized in a jurisdiction outside of Canada.

THIS COURT ORDERS that the Proposal Trustee is authorized and empowered, as a foreign representative of Electro Sonic and the Proposal Proceedings, to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the *United States Bankruptcy Coe,* and any other provisions of the *United States Bankruptcy Code*.

Attached hereto as Exhibit F is a copy of the Trustee Order, which is incorporated herein by this reference.

14. The Company filed Chapter 15 Petitions immediately following the Canadian Court entering the Trustee Order in the Canadian Proceeding. The Court is respectfully referred to the filed Petitions, which are incorporated herein by this reference.

15. Without the interim relief requested herein, the Company is exposed to an imminent risk suppliers will terminate supply agreements due to non-payment of substantial amounts owing which will put the potential insolvency sale in jeopardy and the loss of more than 100 jobs. The relief is necessary as there is a material risk that parties in the United States will take steps that will cause harm to the Company's ability to complete a sale of the Company's business and assets under the NOI proceedings for the benefit of all of the Company's creditors. As well, the Company is party to a number of supply and distribution agreements with suppliers, and a number of such suppliers have informed the Company that they refuse to deliver further goods to the Company, even on a COD basis, without payment of all or part payment of existing arrears. The Chapter 15 proceedings are intended to stabilize the business and prevent termination of agreements in order for the Company to complete the sale transaction contemplated by the LOI.

## NEED FOR PROVISIONAL RELIEF

16. Recognition of the Canadian Proceeding under Chapter 15 of the Bankruptcy Code, and provisional relief pending a final recognition hearing will best assure an economical and equitable administration of the Company's foreign estate. Immediate relief is sought in order to preserve and protect the Company's Assets and prevent harm to the Company's creditors while preventing the Company or the Petitioner from running afoul of any United States Courts. If injunctive relief is not granted, the Company's creditors are likely to take actions that would disrupt the orderly administration of the Company's estate, leading to conflict between the United States and the Canadian Court and, at a minimum, overly burden the liquidation process. Moreover, if the provisional relief is not granted, the Company is exposed to an imminent risk that suppliers will terminate supply agreements due to non-payment of substantial amounts owing which will put the potential insolvency sale in jeopardy and the loss of more than 100 jobs. Also, the relief is necessary as there is a material risk that parties in the United States will take steps that will cause harm to the Company's ability to complete a sale of the Company's business and assets under the NOI proceedings for the benefit of all of the Company's creditors. As well, the Company is party to a number of supply and distribution agreements with suppliers, and a number of such suppliers have informed the Company that they refuse to deliver further goods to the Company, even on a COD basis, without payment of all or part payment of existing arrears. The Chapter 15 proceedings are intended to stabilize the business and prevent termination of agreements in order for me to perform my court-appointed duties to complete the sale transaction contemplated by the LOI.

17. Moreover, it is my understanding that this District frequently grants requests for similar provisional relief in chapter 15 cases. *See, e.g., In re Elpida Memory, Inc.*, Case No. 12-

10947 (CSS) (Bankr. D. Del. March 21, 2012) (order granting provisional relief, including protections of automatic stay); *In re Artic Glacier Int'l Inc.*, Case No. 12-10605 (KG) (Bankr. D. Del. Feb 23, 2012) (order granting provisional relief, including the protections of automatic stay); *In re Angiotech Pharm. Inc.*, Case No. 11-10269 (KG) (Bankr. D. Del. Jan. 31, 2011) (order granting provisional relief, including protections of automatic stay); *In re Nortel Networks UK Ltd.*, Case No. 09-11972 (KG) (Bankr. D Del. Oct. 27, 2010) (order granting provisional relief, including protections of automatic stay); *In re MAAX Corp.*, Case No. 08-11443 (CSS) (Bankr. D. Del. July 14, 2008) (order granting provisional relief, including the protections of automatic stay).

18. Granting the relief sought herein will best assure an economical, expeditious and equitable administration of the Company's estate. Moreover, rather than exposing the Company and its Assets to litigation that could lead to piecemeal distribution of its Assets, as well as additional costs and distraction from the administration of the estate, the Petitioner will be afforded the "breathing room" to conduct an orderly sale of the Company business.

19. As set forth in the Application, the Company is the subject of a "foreign proceeding" within the meaning of Section 101(23) which is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code. Further, the Petitioner is a "foreign representative" within the meaning of Section 101(24) of the Bankruptcy Code.

20. Petitioner is entitled to obtain the provisional relief requested pursuant to Sections 105(a) and 1519 of the Bankruptcy Code. Pursuant to Sections 105(a) and 1519, injunctive relief in the form requested is in the best interest of the Company and its creditors and may be issued on a temporary basis without notice.

21. In contrast to the potential harm described above, granting the relief requested will not prejudice any persons subject to the Preliminary Injunction. It is important to note that the Foreign Representative is only seeking to ensure that parties are enjoined from circumventing the Canadian Proceeding and from taking actions in the United States that could prove wasteful of the time and effort of United States courts as well as all interested parties.

22. Moreover, any person interacting with the Company could reasonably expect to have to comply with Canadian insolvency law when engaging in business activities with the Company, regardless of whether or not that person is located in Canada and is aware of the Canadian Proceeding. Therefore, it would be inherently fair and expected to require all parties to conform to the Canadian Proceeding, as would be the case for creditors of a U.S. Chapter 11 debtor.

## CREDITORS

**A.    RBC.**

23. Royal Bank of Canada ("RBC") is the Company's operating secured lender. ESI is the borrower and ESA is a guarantor under a Second Amended and Restated Loan Agreement with RBC dated as of October 31, 2011, as amended. Pursuant to the agreement, RBC originally made available to ESI a CDN$10,000,000 revolving, variable rate facility.

24. ESA is the borrower and ESI is a guarantor under an Amended and Restated Credit Facility Letter Agreement with RBC dated as of October 31, 2011, as amended. Pursuant to the agreement, RBC originally made available to ESA a US$4,000,000 revolving, working capital credit facility and letter of credit facility.

25. As a result of the financial difficulties experienced by the Company in recent years, as discussed above, the Company has been in breach of a number of its financial

covenants to RBC, and a number of amendments have been made to the credit facilities discussed above, including reductions in the amount available to the Company.

26. In connection with the credit facilities made available by RBC to the Company, the Company has granted various security documents in favor of RBC, including general security agreements and the assignment of a Key Man Life Insurance Policy on the life of Martin Rosenthal, which has a cash surrender value in excess of $2,000,000.

27. As of February 8, 2014, the Company is indebted to RBC in the amount of approximately CDN $2.62 million for principal and interest.

**B.     Related Parties.**

28. In addition to the secured indebtedness that the Company owes to RBC, ESI has granted security over all of its personal property to the following related parties (collectively, the "Related Parties"):  (a) S.S.I. Inc., in connection with a promissory note dated January 31, 1987, which has been repaid; (b) Trumar Communications Inc., with respect to indebtedness in the amount of $3,039,946 as of February 6, 2014 in connection with a promissory note dated May 1, 2008; (c) Joel Rosenthal, indebtedness in the amount of $696,551 as of February 6, 2014 in connection with a promissory note dated May 1, 2008; and (d) Different Drummer Communications Inc., indebtedness in the amount of $1,084,845 as of February 6, 2014 in connection with a promissory note dated February 15, 1984.

29. Additionally, when ESA was established in 2009, ESI was the owner of a significant amount of inventory. ESI and ESA entered into a transaction whereby ESI transferred all inventory to ESA in consideration for the delivery of a demand promissory note in the face amount of CDN$13,047,008. ESA granted security over all of its personal property to ESI with respect to its obligation to repay this indebtedness. As of February 6, 2014, ESA is indebted to ESI in the amount of approximately US $4.62 million for principal and interest.

C.   **PPSA and UCC Registrations.**

30.   I am advised by the Company's Canadian legal counsel, Chaitons LLP ("Chaitons"), that Chaitons obtained searches from the Personal Property Registration System in the provinces of Ontario (current as of January 20, 2014) and British Columbia (current as of February 4, 2014) in respect of registrations under the Personal Property Security Act ("PPSA"), which are outstanding against ESI.

31.   In addition to registrations by RBC and the Related Parties with respect to the security described above, the Ontario PPSA search results disclose particulars of the following outstanding registrations against ESI: (a) Ricoh Canada Inc. ("Ricoh") in respect of collateral classified as "equipment" and "other"; and (b) De Lage Landen Financial Services Canada Inc. in respect of collateral classified as "equipment" and other.

32.   As for the BC PPSA, the search results disclose all collateral registrations in favor of the Related Parties, and a registration made by Ricoh in collateral with a general description of "all goods supplied by the secured party to the debtor, together with all attachments, accessories, accessions, replacements, substitutions, additions and improvements to the foregoing. Proceeds: goods, chattel paper, securities, money, crops, licenses and intangibles." Attached hereto as Exhibit G are copies of the Ontario and BC PPSA searches.

33.   I am also advised by Chaitons that it obtained Uniform Commercial Code ("UCC") searches in the State of Delaware on January 2014, with respect to registrations filed under the UCC against the personal property of ESA. Based on such searches, I understand that RBC and ESI have filed all collateral UCC registrations in the State of Delaware against the personal property of ESA. Attached hereto as Exhibit H are copies of the UCC searches.

D. **Government Remittances and Amounts Owed to Employees.**

34. As of February 6, 2014, the Company was current with respect to all amounts owed for government remittances and all amounts owed to employees.

E. **Unsecured Creditors.**

35. As of February 6, 2014, ESI owed its trade creditors approximately $1.1 million, and ESA owed its trade creditors approximate $3.5 million.

## REQUESTS FOR RECOGNITION AND RELATED RELIEF[2]

36. In connection with the filing of these chapter 15 cases, the Debtors have submitted the Recognition and Relief Motion, the Joint Administration Motion, and the Notice Procedures Motion. In addition to the facts set forth above, factual bases for relief under each of these motions is set forth below. I believe, after consultation with counsel, that the relief requested by each of the motions is necessary to maximize value for all of the Debtors' creditors through the Canadian Proceeding, protect the Assets, and properly administer these proceedings.

A. **Recognition and Relief Motion**

37. Concurrently herewith, the Foreign Representative filed the Recognition and Relief Motion seeking (a) entry of the Provisional Order: (i) recognizing the Trustee Order and the Canadian Stay, (ii) applying section 362 of the Bankruptcy Code in these chapter 15 cases on an interim basis pursuant to sections 1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy Code, and (iii) granting such other and further relief as the Court deems just and proper; and (b) entry of the Final Order: (i) granting the petitions in these cases and recognizing the Canadian Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code, (ii) giving full force and effect in the United States to the Trustee Order, including any extensions or

---

[2] Capitalized terms used but not otherwise defined in this section have the meanings ascribed to them in the relevant First Day Papers.

amendments thereof authorized by the Canadian Court and extending the protections of the Provisional Order to the Debtors on a final basis, and (iii) granting such other and further relief as the Court deems just and proper.

38. As detailed more fully in the Memorandum of Law filed in support of the Recognition and Relief Motion, I believe that there is a compelling case for recognition of the Canadian Proceeding as a foreign main proceeding. I have been advised by my counsel that the Canadian Proceeding is a "foreign proceeding" and that MNP is a "foreign representative," as those terms are defined in the Bankruptcy Code. I have been further advised that these cases were duly and properly commenced by filing the Petitions for Recognition accompanied by all fees, documents, and information required by the Bankruptcy Code and the Bankruptcy Rules.

39. My counsel has also advised me that the automatic stay is one of the most fundamental protections provided by the Bankruptcy Code. I have been advised that it halts all collection efforts, harassment, and foreclosure actions against debtors and provides them with necessary breathing room to step back from and attempt to resolve the financial pressures that caused their bankruptcy filing. Here, the immediate imposition of the automatic stay pursuant to the Provisional Order is necessary to, among other things, the Company is exposed to an imminent risk suppliers will terminate supply agreements due to non-payment of substantial amounts owing which will put the potential insolvency sale in the Canadian Proceeding in jeopardy and the loss of more than 100 jobs.

40. In contrast, I believe that the Debtors' creditors will suffer little, if any, harm as a result of the requested provisional relief as such relief will merely preserve the *status quo* and enable the Debtors to continue to finance their operations during the short time necessary for the Court to rule on the Petitions for Recognition. In fact, I believe that granting the request for

provisional relief will benefit the Debtors' creditors because it will ensure that the value of the Debtors' assets and business are preserved and maximized.

41. I can attest that the Canadian Proceeding is pending in Canada and Canada is the center of each of the Company's main interests. As set forth above, The Company is now headquartered in Markham, Canada, with sales offices located across Canada and a 3,000 square foot distribution center in Vancouver, British Columbia. All product and sales functions are managed there. Also, all invoicing is completed, and all cash is collected, in Markham, Canada.

42. Finally, as described in the Memorandum of Law and the Recognition and Relief Motion, and as discussed with counsel, I understand and believe that recognizing the Canadian Proceeding as a foreign main proceeding and granting the relief requested therein on a final basis is consistent with the purposes of chapter 15 of the Bankruptcy Code and public policy of the United States.

43. Therefore, I believe that the provisional and final relief requested in the Recognition and Relief Motion is necessary and appropriate and is in the best interests of the Debtors, their creditors, and other parties in interest.

**B.    Joint Administration Motion**

44. The Foreign Representative has also filed, concurrently herewith, the Joint Administration Motion seeking entry of an order directing joint administration of these chapter 15 cases for procedural purposes only, and providing that parties in interest shall use a consolidated caption to indicate that any pleading filed relates to the jointly administered chapter 15 cases.

45. I believe that joint administration of these chapter 15 cases is warranted because the Debtors' financial affairs and business operations are closely related and because it will ease the administrative burden of these cases on the Court and interested parties. I can confirm that

the Foreign Representative anticipates that the various notices, motions, hearings, orders, and other pleadings in these cases will affect all of the Debtors. I believe that the failure to jointly administer these cases would result in numerous duplicative pleadings filed for each issue and served upon separate service lists. I also believe that such duplication of substantially identical documents would be wasteful and would unnecessarily burden the Clerk of the Court (the "Clerk").

46. Moreover, I have been advised that joint administration will permit the Clerk to use a single docket for all of the Debtors' cases and to combine notices to creditors and other parties in interest. I have further been advised that joint administration will protect parties in interest by ensuring that they will be apprised of the various matters before the Court. I believe that the proposed caption set forth in the Joint Administration Motion should be approved as the modified caption for these chapter 15 cases.

47. I believe that the rights of the respective creditors of each of the Debtors will not be adversely affected by joint administration of these cases inasmuch as the relief sought in the Joint Administration Motion is purely procedural and not intended to affect substantive rights. I have been advised that each creditor and party in interest will maintain whatever rights it has against the particular Debtor against which it allegedly has a claim or right. I have also been told by my counsel that the rights of all creditors will be enhanced by the reduction in costs resulting from joint administration. Finally, I have been advised that if the requested relief is granted, the Court and the Clerk will be relieved of the burden of entering duplicative orders and keeping duplicative files, and supervision of the administrative aspects of these cases by the Office of the United States Trustee for the District of Delaware will be simplified.

48. Therefore, I believe that the relief requested in the Joint Administration Motion is necessary and appropriate and is in the best interests of the Court, the Debtors, their creditors, and other parties in interest.

C. **Notice Procedures Motion**

49. Concurrently herewith, the Foreign Representative has also filed the Notice Procedures Motion seeking the entry of an order approving (a) the form of notice (the "Recognition Hearing Notice") of (i) the chapter 15 petitions, (ii) the entry of the Provisional Order, (iii) the deadline to object to the proposed Final Order, and (iii) the Recognition Hearing; (b) the manner of service of the Recognition Hearing Notice; and (c) the manner of service on the Master Service List of any pleadings filed in these chapter 15 cases.

50. I can attest that the Debtors have hundreds of creditors, potential creditors, and other parties in interest, all of whom need to be provided with, among other things, notice of the Provisional Order, the proposed Final Order, the Recognition Objection Deadline, and the Recognition Hearing. Under the facts and circumstances of the Debtors' chapter 15 cases, I submit that service of the Recognition Hearing Notice in the manner proposed herein will provide the Notice Parties with due and sufficient notice of the relief requested in the Recognition and Relief Motion and associated objection deadline and hearing dates.

51. Furthermore, I believe that the Recognition Hearing Notice provides multiple efficient ways for any party receiving such notice to obtain copies of pleadings filed in these chapter 15 cases, as it provides contact information that can be used to obtain critical documents including the Recognition Motion, the Provisional Order, the Trustee Order, and the proposed Final Order. Additionally, I believe that service by the Foreign Representative of all pleadings that it files in these cases by United States or Canadian mail, first class postage prepaid, on the Master Service List is an efficient and effective way to provide notice to such key parties in these

cases and the Canadian Proceeding. At the same time, I believe that it will not overburden the Foreign Representative with the significant costs associated with copying and mailing all the various documents filed in these cases to the entire matrix of putative creditors and other parties.

52. Therefore, I believe that the relief requested in the Notice Procedures Motion is necessary and appropriate and is in the best interests of the Court, the Debtors, their creditors, and other parties in interest.

## NO PRIOR REQUEST

53. No prior application for any of the above relief has been made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Toronto, Ontario on February 10, 2014.

_____
Sheldon Title